WALTER L. LASCELLES & others *vs.* FRANKLIN E. CLARK
& others.

Suffolk.    November 30, December 1, 1909. — January 8, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Guaranty. Contract,* What constitutes, Construction. *Equity Pleading and Prac-
tice,* Demurrer, Master's report. *Evidence,* Of mental condition. *Notice. Equity
Jurisdiction,* Based on equitable right of property. *Constitutional Law,* Right to
trial by jury. *Jury.*

In a suit in equity by certain merchants doing business in Kingston, Jamaica, to
enforce an equitable charge, upon property held in trust for the defendant,
created by a guaranty in writing signed by the defendant, the guaranty thus
secured was as follows : " In consideration of your continuing for the next
month the account current between you or any of your firms and D. of
Kingston, druggist, I hereby guarantee payment of all sums of money in which
D. may now be indebted to you or to any or either of your firms and also
of any future indebtedness whether in respect of account current or otherwise
which D. may incur with you or either of you." Upon receiving the guar-
anty the plaintiffs agreed to extend D.'s credit for the next month.  A master
to whom the case was referred found that the guaranty was accepted by the
plaintiffs at the time it was signed.  The defendant contended that the writing
was an offer which could not be accepted by a promise to continue the account
current with D. for one month, but could be accepted only by such continuance
in fact.  *Held,* that the defendant's contract of guaranty could be and was
accepted by the plaintiffs' promise.

In a suit in equity to enforce an equitable charge, upon property held in trust for
the defendant, created by a guaranty in writing of an account current between
the plaintiffs and a certain dealer, which the plaintiffs accepted by a promise to
extend the dealer's credit for " the next month," the defendant demurred to the
bill and assigned as a ground of demurrer " That the plaintiffs did not within a
reasonable time give this defendant notice of the acceptance of the guaranty
set out in their bill nor of the furnishing of goods or credits thereunder."  In
support of his demurrer the defendant contended that even if the guaranty was
accepted on the day of its date, the plaintiffs could not hold the defendant under
it by reason of the account current having been continued after the expiration
" of the next month " unless notice of that fact was given within a reasonable
time.  *Held,* that this contention was not open to the defendant under the
assignment.

Upon the issue of the mental condition of a person when he signed a certain instru-
ment, memoranda made by that person in the month of August in a certain
year, during the trial of a criminal prosecution against him about the time the
instrument was signed, which show that he understood fully what then took
place, are admissible in evidence, although they are contained in a note book
which is a diary for the year following that in which the trial took place issued
by a life insurance company as an advertisement.

In a suit in equity to enforce an equitable charge, upon property held in trust for the defendant, created by a guaranty in writing, where the bill sets forth the instrument of guaranty signed by the defendant, which at the time it was made was accepted by an oral promise of the plaintiffs, and this is found to have been the fact by a master to whom the case is referred, an exception to the report of the master "because the written guaranty in suit did not set out the agreement which the master found was actually made by the parties" must be overruled, as the writing purports only to set out the promises of the defendant and does not purport to be a reduction into writing of the whole agreement then made.

In a suit in equity by certain merchants doing business in Kingston, Jamaica, to enforce an equitable charge, upon property held in trust for the defendant, created by a guaranty in writing signed by the defendant, the guaranty thus secured was as follows : " In consideration of your continuing for the next month the account current between you or any of your firms and D. of Kingston, druggist, I hereby guarantee payment of all sums of money in which D. may now be indebted to you or to any or either of your firms and also of any future indebtedness whether in respect of account current or otherwise which D. may incur with you or either of you." Upon receiving the guaranty the plaintiffs agreed to extend D.'s credit for " the next month." A master to whom the case was referred found that the guaranty was accepted by the plaintiffs at the time it was signed. It further appeared that the purpose of the defendant's guaranty was to procure an extension of a certain draft accepted by D. due six days later and extensions not only for a month but for such longer time as the plaintiffs were willing to grant them after having had an opportunity to verify the defendant's statements as to the security he had given them and to satisfy themselves of its value, and that such extensions were known to require a renewal and renewals of acceptances from time to time. The defendant excepted to the master's report " because the master ruled that the guaranty in suit itself comprehends the renewals of the drafts and bills of exchange which constituted the indebtedness of D. to the plaintiffs," and " because the master declined to rule that the guaranty in suit was discharged by the renewals of the drafts and bills of exchange, which constituted the indebtedness of D. to the plaintiffs, without the consent of this defendant." *Held*, that these exceptions to the master's report were overruled rightly, as in view of the circumstances under which the guaranty was made the words " any further indebtedness whether in respect of account current or otherwise " included renewals made in the ordinary course of business so long as the plaintiffs were willing to grant renewals on the defendant's security.

In a suit in equity by certain merchants doing business in Kingston, Jamaica, to enforce an equitable charge, upon property held in trust for the defendant, created by a guaranty in writing signed by the defendant, the guaranty thus secured was as follows : " In consideration of your continuing for the next month the account current between you or any of your firms and D. of Kingston, druggist, I hereby guarantee payment of all sums of money in which D. may now be indebted to you or to any or either of your firms and also of any future indebtedness whether in respect of account current or otherwise which D. may incur with you or either of you." Upon receiving the guaranty the plaintiffs agreed to extend D.'s credit for " the next month." A master to whom the case was referred found that the guaranty was accepted by the plaintiffs at the time it was signed. It further appeared that the plaintiffs had extended D.'s credit beyond " the next month," and that, in the course of the conversa-

tions between the plaintiffs and the defendant which led up to the contract of guaranty, the plaintiffs were told by the defendant at least twice that he expected to go into business with D. The defendant excepted to the master's report " because the master found for the plaintiffs after finding that there was no notice to this defendant that any goods had been furnished to D. or that any credit had been given D. upon this defendant's guaranty at any time after the execution of the guaranty." *Held*, that, so far as the defendant's guaranty related to continuing D.'s account after the expiration of " the next month," it was in the nature of an offer, in regard to which the rule is that notice is necessary only where the act to be done is of such a kind that knowledge of it will not come quickly to the guarantor, and that, as the plaintiffs had been told by the defendant that he expected to go into business with D., no notice to him was necessary that the account current had been extended beyond " the next month "; so that the exception to the master's report was overruled rightly.

A suit in equity which is based upon a claim to an equitable right of property is within the sole jurisdiction of a court of equity, and the granting in such a suit of a motion for a trial of issues of fact by a jury is a matter within the discretion of the judge who hears the case.

In a suit in equity to enforce an equitable charge, upon property held in trust for the defendant, created by a guaranty in writing signed by the defendant of credit to be granted to a certain dealer by the extension of an account current with him, the instrument of guaranty charged payment of any liability thereunder on all the defendant's interest in the estate of his late mother. It appeared that the defendant when he signed the guaranty had no right of property at law in the estate of his mother but only a right in equity to support and maintenance out of one half of the income, any surplus of such one half being accumulated to be paid to the defendant with one half of the principal when the defendant should attain the age of thirty years. About two weeks before the filing of the bill the defendant arrived at the age of thirty years, and the trustee under the will of the defendant's mother, having been notified of the plaintiff's claim, immediately conveyed to the defendant his share of the trust property, which by a simultaneous conveyance was returned to the trustee on new trusts by which it was sought to limit further the rights of creditors. The plaintiff filed an amendment to his bill, alleging that these transfers and conveyances were a fraud upon his rights in the trust estate and therefore were void as against him. The judge who heard the case denied a motion of the defendant asking for the framing of issues of fact to be submitted to a jury. The defendant contended that he had a right to a trial by jury. *Held*, that the suit was based upon a claim to an equitable right of property, which was within the sole jurisdiction of a court of equity, so that the defendant had no constitutional right to a trial by jury ; and that the character of the suit was not changed by the amendment of the bill which did not convert it into a bill to reach and apply in equity property conveyed in fraud of creditors.

BILL IN EQUITY, filed in the Superior Court on December 31, 1906, and amended on January 2, 1907, to enforce upon property held in trust for the defendant Franklin E. Clark an equitable charge created by the following instrument:

"23d September 1905.
" Messrs. A. S. Lascelles & Co.,
            E. A. DePass & Co.,
            Lascelles DeMercado & Co.
" Dear Sirs :

" In consideration of your continuing for the next month the account current between you or any of your firms and Mr. Malcolm George DaCosta of Kingston, Druggist, I hereby guarantee payment of all sums of money in which Mr. DaCosta may now be indebted to you or to any or either of your firms and also of any future indebtedness whether in respect of account current or otherwise which Mr. DaCosta may incur with you or either of you.

" I hereby charge payment of any liability hereunder on all my interest in the estate of the late Evelyn Alice Clarke of Dorchester, Boston, U. S. A., deceased, and I agree to execute a legal mortgage whenever you may require me to do so. My liability hereunder is limited to the sum of seven hundred pounds.
                                " Yours faithfully,
                                        " F. E. Clark."

The plaintiffs were merchants doing business in Kingston in Jamaica, London in England, and New York. The defendant Franklin E. Clark (hereinafter called the defendant) was a resident of Boston who spent about six months of the year 1905 in Jamaica. The interest on which the charge was given was created by the will of the defendant's mother, under which the residue was to be held in trust to apply the income to the maintenance and education of the defendant and his younger brother until each was thirty years old, the income not to be alienable or subject to the claims of creditors. Each son was to receive his share of the principal upon reaching the age of thirty years. If either should die before he was thirty years of age, his share was to go to his issue, or in default of issue to his brother.

The defendant became thirty years old on December 18, 1906. This bill was filed on December 31, 1906. Immediately afterwards the plaintiffs learned that on December 18 the trustee, who had been notified promptly of the plaintiffs' claims, had conveyed to the defendant his share of the trust property, and

by a simultaneous conveyance, made through the defendant's counsel, had taken it back on new trusts by which it was sought to limit further the alienability of the property and the rights of creditors. Allegations of the facts as to these conveyances were added to the bill on January 2, 1907, by amendment.

The trustee, who was joined as a defendant, admitted these conveyances, and alleged that he was bound to make them because the provisions of the will made the charge invalid, and the beneficiary therefore had the right to call for a conveyance.

The defendant demurred to the bill on the ground that the bill made out no case for equitable relief, that the plaintiffs had an adequate remedy at law, and that " the plaintiffs did not within a reasonable time give this defendant notice of the acceptance of the guaranty set out in their bill nor of the furnishing of goods or credits thereunder." He also filed an answer denying his signature and alleging that if genuine it " was procured from him by fraud and deceit and by duress and undue influence, and while said defendant was under the influence of drugs and mentally incapacitated from doing business and totally irresponsible therefor." By an amendment to the answer he further alleged that his liability, if any, had been discharged by extensions given to DaCosta without his knowledge or consent.

The demurrer was overruled by *Richardson*, J., and the defendant appealed.

The defendant was ordered " to specify as far as he can what acts or facts of fraud or deceit or duress he relies on." His specifications were as follows: " That his purported signature . . . was procured from him by fraud in that this defendant was under the influence of drugs and mentally incapacitated from doing business, and totally irresponsible at the time, if he ever signed said letter; and that said purported signature was procured from him by undue influence in that this defendant was under the influence of drugs and mentally incapacitated from doing business and totally irresponsible at the time, if he ever signed said letter, and was in such a condition that he was subject to the influence and suggestions of others, and would act upon such suggestions and under the influence of others, without the exercise of his own volition."

The defendant filed a motion that issues be framed for a jury, presenting with the motion the following issues:

" 1. Is the purported signature on the letter dated September 23, 1905, as alleged in the plaintiffs' bill, the genuine signature of the defendant Franklin E. Clark?

" 2. Was said signature procured of the defendant Franklin E. Clark by fraud and deceit?.

" 3. Was said signature procured of the defendant Franklin E. Clark by undue influence?

" 4. Was said signature procured of the defendant Franklin E. Clark, while he was under the influence of drugs to such an extent that he was irresponsible and incapacitated from doing business?"

This motion was denied by *Richardson,* J., and the defendant appealed.

Thereafter the case was referred to Arthur P. Hardy, Esquire, as master, who reported, subject to a question of law whether the defendant had been discharged by certain renewals given by the plaintiffs to DaCosta, that the defendant was liable to the plaintiffs in the sum of $3,490.85.

The following facts, among others, appeared by the master's report:

The plaintiffs were general merchants, whose business was "an extensive one, carried on in all parts of the world." DaCosta was in 1905 a druggist and grocer in Kingston. He had for some time been buying goods from the plaintiffs, for which he was in the habit of paying by accepting drafts. In the ordinary course of business these were taken up by new acceptances given as the old acceptances fell due. Early in September, 1905, DaCosta was largely indebted to the plaintiffs, and they refused to give him further credit. This apparently meant closing up his business. He urged them not to do this, and told them " that he had some one who would guarantee the account and would probably go into business with him." The defendant, who had been in Jamaica for several months, then called on the plaintiffs, confirmed DaCosta's statements, and proposed to give the plaintiffs security upon his interest in the trust estate. The plaintiffs were not disposed to accept this security, and it took several weeks before DaCosta and the defendant could persuade them to do so.

In the course of the conversations with the plaintiff DeMercado, the defendant "reiterated his statement to the effect that he felt under obligations to DaCosta, and gave as his reason for desiring to go into business with him that the condition of his health was such he was unable to live North."

Finally, on September 23, 1905, the plaintiff DeMercado agreed to accept the guaranty, and went with DaCosta and the defendant to the office of his solicitors, Farquharson and Milholland, "leading solicitors on the island of Jamaica." After being informed of the facts Mr. Milholland went into his private office and dictated the form of the guaranty. When he returned with the typewritten paper the defendant called attention to the fact that the amount of his obligation was to be limited to £700, and this addition was made by Mr. Milholland in his own handwriting. The defendant also "inquired why the credit to be extended to DaCosta was therein stated to be for the 'next month,' and both Messrs. Milholland and DeMercado explained to him that the extension of credit was not necessarily limited to the period of one month; that the plaintiffs now proposed to bind themselves for one month, and that during such time the security offered by the defendant would be investigated and the account would not be closed at the end of the month unless the security turned out to be unsatisfactory." As Mr. Milholland testified in his deposition, he said to the defendant: "That is only a minimum time that Mr. DeMercado agrees to give, and is the consideration for the giving of the guaranty by you." The defendant then signed the agreement, and it was accepted by the plaintiffs. The master's finding on these facts was as follows: "Upon the foregoing facts I find and rule that the guaranty was accepted by the plaintiffs at the time it was signed, and that Dr. Clark then so understood it."

Upon all the evidence before him, the master found that neither DeMercado nor Mr. Milholland "had any knowledge or intimation or reason to know" of the defendant's habits, and that "his appearance and the statement he made to them when the guaranty was signed were such that they believed, and had the right to believe, they were dealing with a man fully able and mentally competent to make the contract embodied in the guaranty." He further found that when the guaranty was signed

the defendant was not in fact mentally incapacitated. On this point he stated his conclusions as follows: "It is possible that the doctor's statement is correct that at the time of the hearings before me he had no clear recollection of what happened either at the trial [upon a criminal charge, when he made the notes referred to below,] or in fact during any part of his stay in Jamaica. Taking into consideration, however, the fact that Dr. Clark was under treatment by Dr. Clare while confined in jail for three weeks, and that such treatment resulted in a very material lessening of the amount of morphine taken by him, that at his trial in Jamaica no attempt was made to introduce the defense of irresponsibility on the ground of the excessive use of drugs; that Mr. Whitney who then appeared as a witness in his behalf made no mention of Dr. Clark's condition or his use of drugs, or that he considered him mentally irresponsible; that neither Mr. Milholland nor Mr. DeMercado saw any indication of the use of drugs or mental incapacity at the time the guaranty and other papers were signed; that within sixteen or seventeen days Dr. Clark underwent a medical examination on an application for life insurance, and that the doctor who made such examination failed to discover any evidence of mental weakness or use of drugs; that at the time of such examination Dr. Clark subscribed to clear and concise answers to various questions respecting his physical condition; that three days after said examination he made an extensive affidavit concerning the particulars of his dealings with his former solicitor, Mr. Samuel, and that such affidavit makes reference to various dates, places and consultations and contains other matter indicating a reasonably clear comprehension of the situation by Dr. Clark and the various matters in which he was then concerned; that Dr. Clark discussed the terms and conditions of the guaranty and other papers with Mr. Milholland and gave him a clear description of the nature of the security offered, and that he was able to make the clear and comprehensive memoranda in the note book, I am led to the conclusion, and find, that Dr. Clark at the time he signed the guaranty was not then mentally incapacitated from entering into a binding and valid contract, and was not then so under the influence of morphine, cocaine or other drugs that it can be said he did not know what he was doing."

The note book, referred to above, bore the title " The Standard Life Assurance Company 1906 " printed on the outside of the cover, and contained printed matter relating to the offices and business of that company. It was apparently a diary issued by that company and was of sufficient size for memoranda for each day for two weeks upon a single page. In addition to the pages bound into the book there were several sheets of paper fastened in with a wire clip. The book and loose sheets contained handwriting which the plaintiffs contended was Dr. Clark's. This writing comprised Dr. Clark's name and address in Massachusetts and certain notes and memoranda relating to his arrest and trial in Jamaica. The book also contained newspaper clippings giving accounts of the same matter and several photographs of scenes in Jamaica with memoranda in writing indicating that they were views similar to those which formed the basis of the charge against Dr. Clark. The master found that the handwriting was the usual and ordinary handwriting of Dr. Clark and that the memoranda were written by him. Dr. Clark objected to the admission of this note book or its contents in evidence. This objection was overruled, and the master thereupon made the following ruling: " I will exclude the newspaper clippings. I will admit the book so far as the handwriting is concerned as evidence tending to show Dr. Clark's mental condition at that time. Not as evidence of the truth or falsity of the statements."

The defendant filed ten exceptions to the master's report as follows:

" 1. " Because the master admitted in evidence the note book produced by the defendant and referred to in the report as Exhibit 8, so far as the handwriting in that book is concerned, as evidence tending to show this defendant's mental condition at the time of the signing of the guaranty or at any material time.

" 2. Because upon the facts reported the master found for the plaintiffs.

" 3. Because the written guaranty in suit did not set out the agreement which the master found was actually made between the parties.

" 4. Because the master ruled upon the facts found that the guaranty in suit was accepted by the plaintiffs at the time it was signed.

"5. Because the master ruled that notice to this defendant of the acceptance of the guaranty in suit was not necessary.

"6. Because the master found for the plaintiffs after finding that there was no notice to this defendant of the acceptance of the guaranty in suit at any time after the execution of said guaranty on September 23, 1905.

"7. Because the master ruled that the guaranty in suit itself comprehends the renewals of the drafts and bills of exchange which constituted the indebtedness of the defendant DaCosta to the plaintiffs.

"8. Because the master declined to rule that the guaranty in suit was discharged by the renewals of the drafts and bills of exchange, which constituted the indebtedness of the defendant DaCosta to the plaintiffs, without the consent of this defendant.

"9. Because the master found upon the facts reported that this defendant was liable to the plaintiffs in the sum of $3,490.85.

"10. Because the master found for the plaintiffs after finding that there was no notice to this defendant that any goods had been furnished to DaCosta or that any credit had been given DaCosta upon this defendant's guaranty at any time after the execution of said guaranty on September 23, 1905."

The foregoing exceptions of the defendant to the master's report were overruled by *Wait,* J., and a final decree was entered declaring "that the plaintiffs are entitled by virtue of the written agreement dated the twenty-third day of September 1905 set forth in the bill of complaint to an equitable lien or charge upon the one half share to which the defendant Franklin E. Clark when he attained the age of thirty years on the eighteenth day of December 1906 became entitled in the real and personal estate held by the defendant John Q. A. Brackett upon the trusts of the will of Evelyn Alice Clark deceased and upon all the income of the said share from the time when the defendant Franklin E. Clark so attained the said age for securing to the plaintiffs the sum of $3,512.32 " with costs, and ordering a sale of the defendant's interest in the trust property if this sum should not be paid within thirty days. From this decree the defendant appealed.

*W. R. Bigelow,* (*G. E. Clifford* with him,) for the defendant Clark.

*E. R. Thayer,* (*J. L. Motley* with him,) for the plaintiffs.

LORING, J. 1. The demurrer was rightly overruled.

The defendant's first contention in support of his demurrer is that the written offer declared on could not be accepted by a promise to continue the account current with DaCosta for the next month; that by its terms the written offer could be accepted only by the continuance in fact of the account current for the next month. If that had been so the guarantor would have been at liberty to withdraw the offer at any time within the month, for example after the plaintiffs had continued the account current for twenty-nine days relying on the guaranty. It cannot be supposed that the parties meant that. The case is within the decision in *Lennox* v. *Murphy,* 171 Mass. 370. This disposes also of the fourth, fifth and sixth exceptions to the master's report.

The other cause of demurrer argued by the defendant was: " That the plaintiffs did not within a reasonable time give this defendant notice of the acceptance of the guaranty set out in their bill nor of the furnishing of goods or credits thereunder."

The defendant has argued in support of this cause of demurrer that even if the guaranty was accepted on the day of its date the plaintiffs cannot hold the defendant under it by reason of the account current having been continued after the expiration " of the next month " unless notice of that fact was given within a reasonable time; and he relies on *Whiting* v. *Stacy,* 15 Gray, 270, and on what was said in *Welch* v. *Walsh,* 177 Mass. 555, 561.

We do not think that that argument is open under that assignment. We shall consider that question in dealing with the defendant's exceptions to the master's report.

2. No error was shown in the admission of the defendant's notes of his trial in the end of August, 1905. They are well taken and show that he understood fully what then took place. The book came from the defendant's possession and the part relied upon appeared to be in his handwriting. We have no means of knowing that the Standard Life Assurance Company did not distribute diaries for 1906 in Jamaica, in August, 1905.

3. The third exception is not well taken. The letter of September 23, 1905, purports to set forth the defendant's promise. It did not purport to be a reduction into writing of the whole

agreement then made, including the promises of the plaintiffs and of DaCosta.

4. The next question presented by the exceptions to the master's report is whether the defendant's liability was discharged by the renewals of DaCosta's indebtedness.

There is no question of the general rule. A guarantor is discharged by an extension of time granted by the creditor to the debtor without the knowledge of the guarantor. A guarantor is in the same position as a surety in this respect. He has a right to decide for himself when the debt guaranteed by him comes due whether he will or will not pay it then and proceed against the principal debtor. By giving the principal debtor time, the creditor deprives the guarantor of that right, and for that reason he is discharged when the time for payment is extended by the creditor without his knowledge. *Chace* v. *Brooks,* 5 Cush. 43. *Carkin* v. *Savory,* 14 Gray, 528. *Bishop* v. *Eaton,* 161 Mass. 496.

But while contracts of guaranty must be construed strictly, we are of opinion that the guaranty in the case at bar, construed in the light of the facts stated in the report, must be taken not only to contemplate but to be a request for the renewals which were made.

The statement of these facts in the master's report is meagre, but enough appears to enable us to come to a satisfactory determination as to the true construction of the defendant's letter of guaranty.

The master found that: " The only outstanding indebtedness of DaCosta to the plaintiffs on September 23, 1905, was the above-mentioned acceptance for £47 0s. 2d. (item 41) and acceptance by DaCosta for £348 4s. 6d. which was a renewal of eight smaller items. This latter item was renewed on Sept. 29th and again on Dec. 29th, and still again on April 2nd. The latter renewal also included other items. I find that such renewals were made in the usual and ordinary course of business between the plaintiffs and DaCosta, and that this custom had prevailed prior to Sept. 23, 1905."

It appears from the account annexed to the bill, which was found by the master to be correct, that the plaintiffs charged to DaCosta in their account with him the discount and stamps

paid to the bank on drafts and on renewal drafts, both before and after September 23, 1905. This, taken with the master's finding that the renewals made after September 23, 1905, were made in the usual course of business between DaCosta and the plaintiffs, and that this course of business prevailed before as well as after that day, leads us to the conclusion that the course of business which resulted in the renewal of the two acceptances of £47 0s. 2d., and £348 4s. 6d. outstanding on September 23, 1905, was as follows: The plaintiffs drew on DaCosta time drafts for the price of goods supplied to him by them ; DaCosta accepted the drafts and the plaintiffs, to put themselves in funds, discounted the drafts in bank; in case these acceptances were not paid at maturity the plaintiffs kept themselves in funds by taking renewal acceptances which again were discounted in bank; the discount and stamps on the drafts being paid by DaCosta or charged to him in account. We also infer from the findings of the master above set forth and from the account annexed to the bill and found by the master to be correct, that in drawing a renewal draft on DaCosta the plaintiffs included in the new draft all items due on DaCosta's account at the date of that draft.

The occasion of the defendants giving the guaranty here in question was that the plaintiffs had refused to extend to DaCosta further credit and had decided to " close him out." It was to enable DaCosta to go on with his business conducted in the manner stated above that the defendant made the promise set forth in his letter of September 23, 1905. The plaintiffs' promise in consideration of the defendant's promise set forth in that letter was to continue the account current for " the next month." It was then stated by the plaintiffs that they would not agree to continue the account current beyond a month, because they had not then had an opportunity to verify the defendant's statements as to the security he had given them and to satisfy themselves of its value. It was also stated by the plaintiffs that during " the next month " they would make the necessary investigation and that they expected to continue the account current beyond " the next month " if they were satisfied that the security given them by the defendant was good.

It is found by the master that DaCosta's acceptance for £348

4*s.* 6*d.* was renewed on September 29, 1905, six days after the date of the defendant's guaranty.   We infer that it was renewed when due.

It appears therefore that the purpose of the defendant's guaranty was to secure an extension of this acceptance for £348 4*s.* 6*d.* due six days later and extensions not only for a month but for such longer time as the plaintiffs were willing to grant them, and that such extensions, if necessary, would and in fact were known to require a renewal and renewals of acceptances from time to time.   We can have no doubt that the words "any future indebtedness whether in respect of account current or otherwise" include renewals made in the ordinary course of business so long as the plaintiffs were willing to grant renewals on the defendant's security.   The seventh and eighth exceptions to the master's report were rightly overruled.

5. The tenth exception to the master's report is in these words : " Because the master found for the plaintiffs after finding that there was no notice to this defendant that any goods had been furnished to DaCosta or that any credit had been given DaCosta upon this defendant's guaranty at any time after the execution of said guaranty on September 23, 1905."

We have already held that the plaintiffs promised to continue the account current for one month, and that a binding contract thereby came into existence at that time.   But the obligation of the plaintiffs under that contract did not extend beyond " the next month."

The necessity of a notice to the guarantor usually has arisen in case of offers of guaranty as distinguished from contracts of guaranty, that is to say, in cases where the question for decision was whether the offer which was to be accepted by performance of the thing in respect to which the creditor was to be guaranteed had or had not become a contract.   See *Bishop* v. *Eaton,* 161 Mass. 496 ; *Davis* v. *Wells,* 104 U. S. 159.

But in cases where there is a binding obligation to do the thing (in respect to which the creditor is to be guaranteed) there is authority for the proposition that notice that the guaranty has become operative must be given within a reasonable time.   See Hoar, J., in *Whiting* v. *Stacy,* 15 Gray, 270.   That question was left open in *Welch* v. *Walsh,* 177 Mass. 555, 561 ;

and by reason of the terms of the guaranty in question in *Davis* v. *Wells*, 104 U. S. 159, it did not have to be decided in that case.

So far as the guaranty related to continuing the DaCosta account after the expiration of the " next month " the defendant's guaranty was in the nature of an offer. The rule in case of offers is that notice is necessary only where the act to be done is of such a kind that knowledge of it will not quickly come to the guarantor. *Bishop* v. *Eaton*, 161 Mass. 496, 499, 500. In the case at bar the plaintiffs were told by the defendant at least twice in the course of the conversations which led up to the letter of guaranty that he expected to go into business with DaCosta. He in fact left Jamaica on November 28. But there is nothing to show that this came to the knowledge of the plaintiffs. Under these circumstances no notice to the defendant was necessary that the account current had been continued beyond " the next month," and it is not necessary to consider whether the notice given on May 15, 1906, was given within a reasonable time.

6. The remaining question raised by the defendant is upon his right to a trial by jury.

This is not a bill of equitable attachment under R. L. c. 159, § 3, cl. 7, by which the plaintiffs seek to reach and apply in payment of a legal claim due to them property which could not be come at in an action at law. It is a bill to enforce the rights of property given to the plaintiffs by the defendant's letter of September 23, 1905. By that letter the defendant agreed that the plaintiffs should be paid out of the property owned by him under the will of his mother. The right of property which he then had under his mother's will was a right in equity only. He had no right of property at law. Until the defendant reached the age of thirty years on the eighteenth of the following December, the legal title was vested in Mr. Brackett and the defendant had a right in equity to support and maintenance out of one half of the income, any surplus of that one half of the income being accumulated and paid to the defendant when he was to receive one half of the principal. And on attaining thirty years of age he was to receive one half of the principal.

In many cases there is no difference in the practical result between a bill to enforce a charge on an equitable right of

property and a bill of equitable attachment to collect a debt out of equitable rights. But in their nature they are essentially different. When A. for valid consideration agrees that B. shall be paid a certain sum out of an equitable right of property, or, as it is put in the case at bar, charges that sum due to B. upon an equitable right of property, B. becomes entitled to be paid that sum out of that property. But the property being property which is recognized in equity and only in equity, his right is an equitable one only and for that reason the subject of a suit in chancery. In case of a bill of equitable attachment the plaintiff has no rights in the property which he thereby seeks to reach and apply. He has a right to a sum of money and resorts to equity for the collection of it because he does not find any property of his debtor which can be reached in satisfaction of his debt by use of the machinery available in an action at law.

The character of the bill now before us was not changed by the amendment, as the defendant seems to assume. The amendment set forth that although duly notified of the plaintiffs' rights Mr. Brackett transferred and conveyed to the defendant his one half of the trust property on the day on which he became thirty years of age, that this transfer and conveyance was without consideration, and that the defendant retransferred and reconveyed the property to Mr. Brackett (also without consideration) on the same day. The plaintiffs alleged that these transfers and conveyances were a fraud upon their rights of property in the trust estate and therefore void so far as those rights were concerned. That did not change the character of the suit and convert it into a bill to reach and apply in equity property conveyed in fraud of creditors, as was the case in *Powers* v. *Raymond,* 137 Mass. 483, and *Merchants' National Bank* v. *Moulton,* 143 Mass. 543, relied upon by the defendant.

The suit before us is a suit based upon a claim to an equitable right of property. Such a suit is within the sole jurisdiction of a court of chancery, and the defendant had no constitutional right to a jury. *Parker* v. *Simpson,* 180 Mass. 334.

We see no reason for overruling the conclusion reached by the judge, as matter of discretion, that issues to a jury should not be granted.

*Decree affirmed.*