CHICAGO LOCK COMPANY, Respondent, vs. KIRCHNER, Appellant.

*April 4—April 30, 1929.*

32

For the appellant there was a brief by *Lees & Bunge* and *Schlabach & Steele,* all of La Crosse, and oral argument by *Fred R. Steele.*

For the respondent there was a brief by *McConnell & Schweizer* of La Crosse, and oral argument by *Charles H. Schweizer.*

DOERFLER, J. Defendant's counsel argue that the alleged guaranty constitutes a mere offer; that by its terms it has application to the future, is continuing, and unlimited in its

amount, and that therefore it must be accepted by the plaintiff before it becomes binding as an effectual instrument of guaranty on the part of the defendant. In assuming this position we are satisfied that counsel is in error. The guaranty was executed pursuant to the contract. It was agreed between the two corporations entering into this contract that the number of locks to be manufactured and shipped was 5,000, and that one of the conditions of the contract required the defendant herein to guarantee the payment of the shipments of locks. The defendant, according to his own admission, was the president of the K. I. P. Corporation and controlled one half of its business. He was fully aware of the terms of the contract when he executed the guaranty, and executed the same at the request of the manager of the K. I. P. Corporation, pursuant to the terms of the contract. Besides, this contract of guaranty is not a conditional contract, but is absolute in form, and it was executed contemporaneously with the contract itself. See *International Textbook Co. v. Mabbott,* 159 Wis. 423, 150 N. W. 429; *Acorn Brass Mfg. Co. v. Gilmore,* 142 Ill. App. 567; *J. L. Mott Iron Works v. Clark,* 87 S. C. 199, 69 S. E. 227; *Cumberland Glass Mfg. Co. v. Wheaton,* 208 Mass. 425, 94 N. E. 803; *Lascelles v. Clark,* 204 Mass. 362, 90 N. E. 875; also note to *William Deering & Co. v. Mortell,* 21 S. Dak. 159, 110 N. W. 86, 16 L. R. A. N. s. 352.

But, assuming that the contract required acceptance, the plaintiff on the 20th day of July, 1926, in a letter addressed to "Albert Kirchner Company, attention Edward H. Kirchner," duly notified the defendant of its acceptance of the guaranty, and at that time the contract had been partially executed, and the various parts which were designed to go into the construction of the locks had been purchased and manufactured and were ready for assembling, and the assembling of the first 1,000 locks had been completed. The defendant claims that he did not receive this letter, but ad-

mits that the contents of the same were communicated to him, and no objection whatever was made by the defendant to such acceptance, and no notice of any kind was given to the plaintiff of a denial of liability.

It is next contended by defendant's counsel that on or about the 20th day of July, 1926, the K. I. P. Corporation notified the plaintiff to discontinue the further assembling of the parts until it received further notice from it; that under these circumstances sec. 121.64 (4) of the Statutes becomes applicable, and that under such provision the plaintiff could recover merely its damages sustained. Sec. 121.64 (4) provides as follows:

"If, while labor or expense of material amount are necessary on the part of the seller to enable him to fulfil his obligations under the contract to sell or the sale, the buyer repudiates the contract or the sale, or notifies the seller to proceed no further therewith, the buyer shall be liable to the seller for no greater damages than the seller would have suffered if he did nothing towards carrying out the contract or the sale after receiving notice of the buyer's repudiation or countermand. The profit the seller would have made if the contract or the sale had been fully performed shall be considered in estimating such damages."

While we are satisfied that the contract of guaranty is absolute, we are nevertheless of the opinion that, assuming that the statute herein set forth is applicable, it must be held, in view of the testimony that the sole expense of assembling amounts to but from two to three cents per lock, that such expense, in view of the total amount of the contract, constitutes an immaterial portion of the contract price.

It is further argued by defendant's counsel that the assembling of the parts destroys their value; that the component parts are largely standard, and that they lose their value when assembled and welded into the manufactured article; that this notice of discontinuance was given in order that the plaintiff might minimize the damages by a sale of

the standard parts and by disposition of the others in a manner which would best serve the purpose of minimizing damages. But here it must be remembered that the market value of the manufactured product was at no time questioned by the K. I. P. Corporation. Its request for a temporary discontinuance of assembling was not based upon this theory, but upon its financial inability to pay for the shipments of locks and upon its apparent inability to dispose of the same. The K. I. P. Corporation at no time repudiated the contract, but requested an extension of the time. Having received liberal extensions at the hands of the plaintiff; the defendant herein is in no position to urge an alleged breach of the contract on the part of the plaintiff.

It is further argued that the $725 was paid to the plaintiff by way of liquidated damages, and that this sum constitutes the maximum amount which plaintiff may recover on account of the alleged breach of contract on the part of the K. I. P. Corporation. This position is plainly untenable, because in addition to the payment of the $725 by the K. I. P. Corporation to the plaintiff, the plaintiff also insisted upon and received the written guaranty of the defendant, which in effect provided that he would pay for the shipments of locks in accordance with the terms of the contract.

Finally, it is urged by defendant's counsel that the contract is an entire one; that the total number of 5,000 locks has not been shipped, inasmuch as it is admitted by plaintiff that the total shipments consisted of only 4,981 locks. The K. I. P. Corporation, however, accepted the locks shipped. No objection was made at any time that the shipments were short nineteen locks; on the contrary, the K. I. P. Corporation consistently took the position that the performance of the contract on the part of the plaintiff could be indefinitely postponed, and that locks could only be shipped upon the order of the K. I. P. Corporation. This places the K. I. P. Corporation in a rather inconsistent position. On the one hand it consistently objected to any shipments after the

first 1,000, and since the commencement of the action the complaint is that sufficient locks had not been shipped. Under the circumstances it is clear that the K. I. P. Corporation waived the shipment of the nineteen locks, for, had it protested on the ground of a shortage, the plaintiff could have supplied these additional locks. See 6 Ruling Case Law, p. 976, § 347. The court ordered judgment for the balance due for the actual number of locks shipped.

*By the Court.*—Judgment affirmed.