NICHOLAS W. MATHEY *vs.* LOUIS G. FREEMAN CO.

Essex.    May 15, 1936. — September 9, 1936.

Present: CROSBY, PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Contract,* What constitutes.

No contract arose where an order sent by a prospective purchaser in Ohio to a dealer in second hand machinery in Lynn in this Commonwealth, requesting him to "ship" certain goods, was revoked before shipment when the dealer received a telegram from the prospective purchaser reading: "Hold shipment machines . . . writing"; nor did a contract arise by reason of subsequent letters from the prospective purchaser which merely expressed an expectation on his part that he finally would be able to close the contract and asked the dealer to "continue to hold shipment," but finally advised him not to hold the machines longer.

CONTRACT. Writ in the District Court of Southern Essex dated October 17, 1933.

The action was heard by *Phelan, J.,* who found for the plaintiff in the sum of $1,735. Upon report to the Appellate Division for the Northern District, the finding was vacated and judgment was ordered for the plaintiff in the sum of $640. Both parties appealed.

The case was submitted on briefs.

*A. P. Teele & E. S. Farmer,* for the plaintiff.

*H. D. Linscott & C. F. Hathaway,* for the defendant.

QUA, J. The underlying question is whether there was any evidence which would warrant the finding of the trial judge that there was a contract between the plaintiff and the defendant for the sale and purchase of certain machines.

The plaintiff was a dealer in second hand shoe machinery at Lynn. The defendant appears to have had a place of business at Cincinnati, Ohio. After some preliminary inquiries involving no offer on either side, the defendant sent to the plaintiff the following order signed by it and dated at Cincinnati June 20, 1931:

"Please ship our order below at prices and terms named, or as previously received, and for delivery as specified.

"Goods left subject to our inspection and acceptance.

[Then follows a list of five machines with the price specified for each.]

Send Invoices to us
Shipping Detail Frt.   ·
        Kentucky State Reformatory
        Frankfort, Ky."

On June 24, before the plaintiff had shipped any machines or made any reply to this order, the defendant telegraphed the plaintiff, "HOLD SHIPMENT MACHINES KENTUCKY STATE REFORMATORY WRITING." In fact the defendant did not write the plaintiff at the time of sending the telegram or thereafter until its letter of July 10, to which reference is hereinafter made. On the same day on which the telegram was sent the plaintiff wrote the defendant acknowledging receipt of the telegram and adding, "We have the shipment all ready to go forward except the Heeler. This machine was purchased yesterday, and will be ready in a day or two." On June 29 the plaintiff wrote the defendant referring to the order of June 20 and stating, "This machinery is all ready for shipment, and we are awaiting your instructions." Again on July 7 the plaintiff wrote the defendant calling attention to the plaintiff's letter of June 29, which remained unanswered, and to the fact that he had not yet "had any instructions" from the defendant.

It is plain that the defendant's order of June 20 was only an offer and that it was not in itself a contract. It did not bind the plaintiff. The plaintiff could accept it and create a binding contract by shipping the machines or he could

reject or ignore it.  And the defendant could revoke it at
any time before acceptance.  We are unable to avoid the
conclusion that as matter of law the defendant's telegram
of June 24 was a revocation of its offer contained in the
order of June 20.  By the terms of the order the plaintiff
could have made shipment at once and if he intended to
accept, he would have been required to ship within a reason-
able time.  By the telegram he was instructed not to ship.
The telegram cannot be construed as a mere modification
of the order with relation to the time of shipment.  No
time was mentioned.  There was nothing in the telegram
or in the circumstances known to the plaintiff which could
form the basis for an implication that the shipment was to
be held for a reasonable time rather than for such time as
the defendant itself might decide, or that the shipment was
ever to be completed.  The reference to "writing" indicated
an intent to communicate further on the subject of the
order and was a reservation of the right to do so.  Such a
communication might take any form or involve any change
in terms, even to the extent of entire abandonment of the
purchase.  By placing the telegram in the plaintiff's hands
before the plaintiff had accepted its offer the defendant
had resumed complete control over the situation.  There
was no longer outstanding any offer which could be ac-
cepted so as to complete a contract upon any known terms.
*Peck* v. *Freese,* 101 Mich. 321.  *Outcault Advertising Co.* v.
*Wilson,* 186 Mo. App. 492.  It follows that the plaintiff's
letters of June 24, June 29 and July 7 did not result in a
contract.  We need not determine whether an offer like
the defendant's order of June 20, which by its terms seems
to look toward a unilateral contract and to call for accept-
ance by performance of an act, can ever be accepted by
an assent without performance.  See *Bishop* v. *Eaton,* 161
Mass. 496, 499.

It remains to consider the subsequent correspondence to
determine whether in the light of what had gone before,
the minds of the parties met at any time upon the terms
of a contract founded upon mutual promises.  On July 10
the defendant wrote the plaintiff:

"We have yours of June 29 and July 7 regarding the equipment on order for the Kentucky State Reformatory.

"We had expected to be able to give you definite shipping instructions by now, but it seems that the Board has not as yet held a meeting in which to authorize the appropriation for this and one of the officials of the State Prison has asked us to withhold shipment until this meeting is held.

"We were speaking to one of the members just the other day and he expected this authority to come thru in a couple of days.

"We would like for you to continue to hold shipment until we have their final instructions."

On July 17 the defendant wrote stating that the "Board" had given their permission to manufacture shoes in the prison and were getting the factory ready; that "we were informed that they expect to tell us to release the machinery no longer than two weeks"; that "a certain amount of red tape . . . is necessary"; and that "If there is any information or material that you require in order to set up the machines correctly, please let us know at once as we feel sure that when everything is set they will want the machinery immediately."

On September 11 the defendant wrote:

"With further reference to our order for several machines we shipped to the Kentucky State Reformatory, we find that the Board that settles all these items has entered into a controversy on something else and it may be another three months before they decide on the machinery for the Penitentiary.

"We hold their order for the machines we ordered from you. We believe that eventually everything will be settled and the proposition decided favorably. However, we cannot say when this will be and rather than have you hold these machines for this particular order, it might be best to sell them if you get the opportunity.

"We will take the chance on getting additional machines when they are ready."

The remainder of the correspondence consists of letters

from the plaintiff to the defendant in which the plaintiff insisted that the defendant accept and pay for the machines, but to which the defendant made no answer. It is evident from the defendant's letters that after sending the telegram the defendant did in fact still expect to purchase the machines at some time and that it knew that the plaintiff was preparing some of them for shipment and that he was holding them for that purpose, but we are unable to discover any unqualified renewal of the defendant's original offer or any new promise to accept the machines at any particular time, or in a reasonable time, or at all, except as might suit the defendant's convenience with reference to its proposed sale to the reformatory. There is no evidence that the reformatory was ever ready to take the machines or that "the Board" ever gave any "final instructions" in the matter.

As in our opinion there was no evidence of any binding contract of sale, the order of the Appellate Division must be reversed and judgment must be entered for the defendant.

*So ordered.*