# DECISIONS

OF THE

## SUPREME JUDICIAL COURT

OF

### MASSACHUSETTS

---

NORTHAMPTON INSTITUTION FOR SAVINGS *vs.* ROGER
PUTNAM & another.

Hampden.    September 17, 1942. — January 7, 1943.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Contract*, What constitutes, For extension of mortgage note. *Savings
Bank. Surety.*

The facts, that there was a conversation between the president of a
savings bank, holder of a mortgage note payable on demand, and a
grantee of the mortgagor who had assumed and agreed to pay the
mortgage note and that after the conversation the president wrote
the grantee a letter stating that "in accordance with our conversation"
certain adjustments in principal and interest payments had been ap-
proved by the board of investment and that "at the end of one year,
the loan will be subject to review," did not require a finding that the
bank and the grantee made a valid binding agreement for an extension
of the time of payment of the note for one year, where there was no
further evidence as to the "conversation," and other evidence of the
action of the board of investment did not justify the statement in the
letter as to review of the loan "at the end of one year."

Even if the president of a savings bank, which was the payee of a mortgage
note payable on demand, had authority to make a proposal to a grantee
of the mortgagor who had assumed and agreed to pay the note, that
certain adjustments of principal and interest payments should be made
and that "at the end of one year, the loan will be subject to review," a
finding that the proposal was accepted and a binding contract made for
extension of the time of payment of the note for one year would not
be shown merely by the grantee's making two only of four payments
contemplated by the proposal to be made during such year.

CONTRACT. Writ in the Superior Court dated July 15, 1939.

The case was tried before *Brown*, J.

*J. A. G. Andre*, for the plaintiff.

*R. J. King & H. J. Corcoran*, for the defendants, submitted a brief.

Cox, J. The plaintiff seeks judgment against the defendants on account of their promissory note dated September 1, 1922, payable to the plaintiff on demand with interest at five and one-half per cent payable semi-annually, and representing a mortgage loan made by the plaintiff to the defendants and secured by a mortgage of real estate. No question as to the statute of limitations is involved. The trial judge allowed the defendants' motion for a directed verdict and reported his action to this court upon the stipulation that if this was error, judgment shall be entered for the plaintiff in a stated sum, together with interest from the date of the writ.

There was evidence that the defendants, on January 15, 1931, conveyed the mortgaged real estate to one Powers, the deed containing the following language: "Subject to a first mortgage of $20,000.00 held by the . . . [plaintiff], all the stipulations and agreements of which mortgage the grantee herein agrees to perform." On January 19, 1931, Powers executed and delivered to the plaintiff a "guarantee" note which recited that the plaintiff was the holder of the defendants' said note and mortgage and that "I waiving all right to demand and notice, hereby guarantee to said Bank and its assigns the full payment of said note, and the full and perfect performance of all the promises, covenants and agreements of said mortgagor in said mortgage contained, and I also agree and promise to and with said Bank that I will pay all taxes that may be assessed on the premises described in said mortgage, whether the same shall be assessed to me, or to said Bank, or to any other person, and to pay Interest on the same at the rate of 5½% . . . per annum."

On March 4, 1931, the defendant Roger L. Putnam wrote the plaintiff to the effect that it had sent him the receipt

for six months' interest on the mortgage in question; that the premises had been purchased by Powers, "and I have no interest in it, and would like to be released from any claim on the mortgage." On March 6, 1931, the plaintiff's president acknowledged this letter, stating that the receipt should have been sent to Powers and that "The mortgage which we hold on this property was made by you and your wife, and you signed the note which secured the mortgage, and when you sold the property to Mr. Powers it was sold to him subject to that mortgage, no doubt."

In 1933 the plaintiff requested of Powers that interest on said mortgage be paid quarterly instead of semi-annually from June 1, 1933, and on November 27, 1935, the plaintiff's president wrote Powers to the effect that there had been no reduction of the principal of the mortgage loan and that the plaintiff would like to see it reduced, and that "In order to assist you in doing this we are willing to reduce the rate of interest to 5%, dating from the first of December, if you will pay $50.00 quarterly on account of the principal of the loan, to be made on the first of March 1936 when the interest is next due and quarterly thereafter." On January 7, 1936, the plaintiff's "investment committee" voted: "Loan . . . L. J. Powers, voted to make rate five per cent from December 1, 1935." Quarterly payments of $50 each on the principal and interest at five per cent were paid beginning March 3, 1936, and continuing to and including September 3, 1937.

On December 14, 1937, the plaintiff's "investment committee" voted: "Loan . . . Lewis J. Powers. Voted, to reduce the rate of interest to three and one-half per cent per annum contingent upon three hundred dollars a quarter being paid, from which the interest at the rate of three and one-half per cent would be paid and the balance applied to the principal of the loan." On December 14, 1937, the plaintiff's president wrote the following letter to Powers: "In accordance with our conversation of December 10th the matter of adjustment of interest rate and principal payments has been approved by our Board of Investment on the following basis: Effective September 1, 1937 and due as of

December 1, 1937, the mortgage interest rate for one year will be at the rate of 3½%. Accordingly, the interest due on December 1, 1937 is $172.37. The amount due on the principal, in accordance with our arrangement, would be $125. If you will forward us your check for $297.37, the proceeds will be distributed for the payment of the December 1st interest and the principal payment as outlined above. At the end of one year, the loan will be subject to review for the following year." Payments of $125 on the principal and interest at the rate of three and one-half per cent were made on December 16, 1937, and on March 2, 1938. "These two votes of the investment committee were passed to encourage said Lewis J. Powers to make payments on the principal of said mortgage loan. The defendants were not notified of the two votes of the investment committee nor of the two letters to said . . . Powers nor did they receive any communication from the plaintiff from the time of the letter of March 6, 1931, until within a year prior to the date of suit, nor did the defendant, Roger L. Putnam, have any knowledge of any of the dealings between the plaintiff and said Lewis J. Powers during that period. The plaintiff, from January 19, 1931, until prior to the suit, was looking to Powers."

On December 26, 1937, Powers told the plaintiff that he thought he might not be able to "carry the property longer." The note in question "was not changed," and no notations of any votes or any correspondence with Powers were made on it. The plaintiff, on November 10, 1938, brought suit against Powers on the "guarantee note," but nothing was recovered. There was evidence, however, of a notation, evidently on the back of the note in suit where payments of interest and payments on principal were entered, as follows: "Assumed by Lewis J. Powers 1–19–31." As bearing upon the value of the mortgaged real estate, there was evidence that the plaintiff's "investment committee" appraised it at $30,000 on January 17, 1933, at $25,000 on October 22, 1935, and at $22,500 on January 10, 1938. Each of these appraisal values is greater than the amount that was due on the mortgage note at the times of the appraisals,

The parties have assumed that Powers assumed and agreed to pay the mortgage by the provisions contained in his deed. The relationship of principal and surety between Powers and the defendants that was created by this conveyance, and the obligation of the plaintiff with respect to it need not be elaborated. See *Lynn Five Cents Savings Bank* v. *Portnoy,* 306 Mass. 436, 438, 439, and cases cited; *Brockton Savings Bank* v. *Shapiro,* 311 Mass. 695, 701–703, and cases cited. The defendants contend that the plaintiff, with knowledge of the sale and recognizing this relationship, made a binding agreement with Powers for the extension of the time of payment of the mortgage note so as to impair their rights against Powers. See *Codman* v. *Deland,* 231 Mass. 344, 346, 347; *Silverstein* v. *Saster,* 285 Mass. 453, 456, 457; *Brockton Savings Bank* v. *Shapiro,* 311 Mass. 695, 703, 704. The precise contention is that the plaintiff and Powers entered into a binding contract to extend the time for payment of the mortgage note for one year, and that either a contract was entered into by the plaintiff through its president in a conversation with Powers, "the terms of which are set forth in the letter of December 14, 1937," or, this letter was an offer of a unilateral contract which was accepted by Powers when he commenced to make payments in accordance with its terms.

The defendants had the burden of showing that the time for payment of the note was extended, and that they thereby became discharged of their obligations. *Phillips* v. *Vorenberg,* 259 Mass. 46, 70. It is true that the letter of December 14 begins with the statement: "In accordance with our conversation of December 10th the matter of adjustment of interest rate and principal payments has been approved by our Board of Investment on the following basis." The record contains no other reference to any conversation on December 10, but there is evidence that on December 14, 1937, the date of the letter in question, the board of investment passed the vote hereinbefore set out. From a comparison of the vote with the letter that was written by the president, it is apparent that he went beyond the terms of' the vote. The statement in the vote that the rate of interest

was reduced to "three and one-half per cent per annum contingent upon three hundred dollars a quarter being paid," cannot be construed as an extension for a definite time of the payment of the note. There is nothing in the vote that warrants the statement in the letter that "At the end of one year, the loan will be subject to review for the following year." From the record, it may be assumed that the plaintiff's president and Powers had a conversation on December 10, but what that conversation was does not appear. It would seem that whatever it was, or whatever proposals may have been made, the matter was to be submitted to the board of investment, and their action is evidenced by their vote on December 14. We are of opinion that no valid binding agreement for an extension can be based upon any conversation that may have taken place between Powers and the plaintiff's president prior to the letter of December 14, 1937.

The defendants contend, however, that that letter "was an offer for an unilateral contract and was accepted by Powers when he started to make the payments in accordance with the terms of the letter." The parties have assumed that the plaintiff's president had authority to bind the plaintiff, and the defendants contend that "the arrangement" between the plaintiff and Powers was "for one year, effective September 1, 1937," and that during "that year the bank agreed to quarterly payments of $125.00 on principal, and interest at $3\frac{1}{2}\%$." Obviously, the defendants must stand or fall by our conclusion as to whether a contract was formed, for if no valid binding agreement was made for an extension, their rights have not been impaired, and their obligations have not been affected. Accordingly, in determining this question, we must look to the dealings between the plaintiff and Powers as evidenced by the letter of December 14, 1937.

If we assume, without deciding, that the letter amounted to an offer for an extension of the time of payment of the principal of the mortgage note, the defendants appear to concede that Powers was required to accept the offer by, at least, an act, and they contend that he did so when he

"started to make the payments." There is nothing in the record to show that Powers accepted the offer in any other way. All that appears is that two payments were made, one on December 16, 1937, and one on March 2, 1938. On December 26, 1937, Powers told the plaintiff that he thought he might be unable to "carry the property longer." The conclusion is inevitable that he failed to make the two remaining payments. There was no promise as in *Lascelles* v. *Clark*, 204 Mass. 362, 368, 372, and no execution of any instruments of undertaking by both parties, as in *Lennox* v. *Murphy*, 171 Mass. 370, 372. All we have are the acts of Powers in making two payments.

That an offer for a unilateral contract is accepted by the act or acts of the offeree in accordance with the offer is not questioned. See *Bornstein* v. *Lans*, 104 Mass. 214; *Bishop* v. *Eaton*, 161 Mass. 496, 499; *Mathey* v. *Louis G. Freeman Co.* 295 Mass. 361, 362–363. The question here is whether an acceptance can be found where the act or acts of the offeree are a part or parts only of those required by the offer. We are of opinion that our decisions are to the effect that an acceptance of an offer must be in accordance with its terms, that is, by full performance by the offeree, in order that a contract may come into existence, and that there was no acceptance in the case at bar within the meaning of our cases. *Wentworth* v. *Day*, 3 Met. 352, 354–355. *Bishop* v. *Eaton*, 161 Mass. 496, 499. *Buffington* v. *McNally*, 192 Mass. 198, 201. *John McClure Estate, Inc.* v. *Fidelity Trust Co.* 243 Mass. 408, 412. *Des Brisay* v. *Foss*, 264 Mass. 102, 111. *Cohen* v. *Bailly*, 266 Mass. 39, 45. *Mathey* v. *Louis G. Freeman Co.* 295 Mass. 361, 363. See *Lewis* v. *Blume*, 226 Mass. 505, 507; *Jewett* v. *Warriner*, 237 Mass. 36; *Elliott* v. *Kazajian*, 255 Mass. 459, 463. The defendants rely upon the case of *Price* v. *Minot*, 107 Mass. 49. But in that case there was a written contract signed by both parties, and the rights of the parties were considered as depending upon the "contract."

In view of our conclusion, it is unnecessary to determine whether an agreement founded upon consideration to reduce the rate of interest discharges the surety. See, how-

ever, *Cambridge Savings Bank* v. *Hyde,* 131 Mass. 77;
*Bearse* v. *Lebowich,* 234 Mass. 492, 497; *Hartford Accident & Indemnity Co.* v. *Casassa,* 301 Mass. 246, 252.

It follows from what has been said that it was error to allow the defendants' motion for a directed verdict, and that judgment is to be entered for the plaintiff in accordance with the stipulation.

*So ordered.*