*Northern District*

No. 4776

**ROBERT M. DOYLE and
WARREN B. SMITH, d/b/a
ALLIED HOME IMPROVEMENTS**

**v.**

**RICHARD W. WILCOX**

(February 7, 1955)

*Eno, J.* The report filed in this case is erroneously entitled "Defendant's Report". At the time of the original filing it is called a "Draft Report" and after its allowance by the trial judge, it is his report and not that of either party to the action, and should be entitled "Report". *Kelley v. Foley*, 284 Mass. 503, 506; *Keeney v. Cibonowski*, 304 Mass. 371, 373, 374; *Perry v. Hanover*, 314 Mass. 167.

We treat it as the report of the judge.

By an action of contract in two counts the plaintiffs seek to recover the sum of $472.00 for eleven storm windows. Count one is on an alleged written contract, hereinafter described. Count two is on *quantum meruit.*

The defendant, besides a general denial, pleaded payment, rescission of the contract and want of consideration.

*At the trial (Schofield, J.) there was evidence tending to show that* the defendant and his wife, on March 22, 1952, were bringing a few things to their

newly purchased home in Natick. One Hoftyzer, a salesman for the plaintiffs, after a conversation with the defendants, wrote out, which he, and the defendant and his wife, signed, the following:

"ALLIED HOME IMPROVEMENTS
Route 9 — Framingham

Date March 22, 1952
Order No. W240

Manufacturers — Distributors
          CONTRACT
Sold to Richard Wilcox
    8 Spring Valley Rd.
    Natick, Mass.

| Room | Width | Height | Color or Slat | Color of Tape | Special Inst's. | Price |
|------|-------|--------|---------------|---------------|-----------------|-------|
| 1. | 3 | 30 | 16 | | Comb. Storm Wind. | $ 99.00 |
| 2. | 7 | 30 | 18 | | Comb. Storm Wind. | 238.00 |
| 3. | | | Picture Window | | | 135.00 |

A deposit of 25% is required on all orders — This is By check — a special order not subject to cancellation. No verbal agreements will be recognized unless entered on this contract.

Deposit           42.00
Payment Plan      430.00
No. of Months       36
Monthly Payment  $13.74
Approx. Delivery
          Date   4 weeks

Cutomer's Signature /s/ Richard W. Wilcox —
          3/23/52
          Total Price     $472.00

Pauline S. Wilcox Accepted by /s/ R. M. Doyle Salesman /s/ Hoftyzer
WHEN ACCEPTING CONTRACT INSIST ON RECEIVING COPY

Hoftyzer testified he did not have any authority to change any of the terms on the printed form and that his instructions were that every order was to be accompanied by a 25% deposit; that he told the defendant he would return the next day to obtain a check for $42.00 from him and that someone would have to come and look at the picture window because it was not a standard one; that he went directly to the plaintiffs' place of business and turned in the signed form.

There was evidence that the plaintiff Doyle signed it on the same day. At about four o'clock on the same afternoon the defendant telephoned Hoftyzer that after discussing the matter with his wife they had decided that they could not afford the storm windows at that time and he was cancelling the order. Hoftyzer testified that he then went to plaintiff's place of business and told plaintiff Doyle that the defendant was cancelling the order, that he did not go to the defendant's house on March 23rd as agreed, and was never paid a commission for the sale.

On the following Monday, March 24, the defendant sent a letter to the plaintiffs reading as follows:

"Allied Home Improvements

Route 9

Framingham, Mass.

Att: Mr. Ernest Hoftyzer

Dear Mr. Hoftyzer,

Concerning our telephone conversation of March 22, 1952, please be advised we are cancelling our order of combination storm windows as of the aforementioned date. We sincerely regret doing this, but under our present financial circumstances it leaves us no alternative.

Very truly yours,

/s/ Richard W. Wilcox"

Doyle testified that Hoftyzer did not tell him of the cancellation on the previous Saturday and that this letter was his first knowledge thereof. Upon receipt of this letter Doyle called Wilcox on the tele-

phone and declined to cancel the order. This was the first time Wilcox knew that Doyle existed, and he told Doyle that he could not afford the windows. Doyle called again several times after that and at one time Wilcox told Doyle that he would buy a few of the windows that year and a few the next year, and at one time he told Doyle that he would come to Doyle's office to discuss the matter, but he never did so. Doyle refused to accept Wilcox's offer to buy a few of the windows that year and a few the next year, and Wilcox later purchased combination storm windows from another concern at a lower price, but he did not purchase a picture window.

Doyle further testified that on March 24, he forwarded the order to a factory in Rhode Island. That the windows were custom made at the factory to the specific measurements obtained by plaintiff Smith; that they paid the factory $245.45; that Hoftyzer did not have any authority to change any of the terms in the written form except when approved by the company; that the plaintiffs finance their contract under FHA arrangements with a local bank and that after Hoftyzer had turned in the order he had called a bank and found that the defendant had a previous FHA loan and had good credit; that this was the first order that Hoftyzer had turned in while working alone and that prior to this order he (Doyle) had always accompanied Hoftyzer in making sales, and that Hoftyzer was paid the regular commission for making the sale.

The defendant seasonably made the following requests for rulings which were disposed by the judge as follows:

"1. The document signed by the defendant on March 22. 1952 was not a contract." *"Denied; inconsistent with findings made supra."*

"2. The document signed by the defendant on March 22, 1952 constituted an offer only." *"Denied; inconsistent with findings made supra."*

"3. The offer made by the defendant on March 22, 1952, was withdrawn before it became an existing contract." *"Denied; not in accordance with findings made supra."*

"4. The plaintiff owed to the defendant the duty to mitigate damages as soon as the plaintiff was informed that the defendant did not intend to complete the contract declared on in the plaintiff's declaration." *"Denied; inapplicable to findings made supra, particularly inasmuch as plaintiff had already obligated himself to the Rhode Island firm before notification by defendant."*

"5. The measure of the plaintiffs' damage is the net profit that the plaintiffs would have made if the contract had been performed." *"Denied by reason of special findings made supra."*

"6. If the evidence does not show that the overhead costs of the plaintiffs generally was not materially increased because of the defendant's failure to perform his alleged contract the plaintiffs are not entitled to recover damages for overhead costs." *"Allowed."*

"7. The measure of the plaintiffs' damage is the difference between what it would actually have cost the plaintiffs to perform the alleged contract and the contract price therefore." *"Denied by reason of special findings made supra."*

"8. The evidence does not warrant a finding that the defendant contracted with the plaintiffs for the installation of a storm picture window." *"Denied; inconsistent with findings made supra."*

The trial judge made findings of facts including substantially those recited above and also found that the contract was also signed by Pauline S. Wilcox, wife of defendant, and Hoftyzer, and was accepted on the face thereof by R. M. Doyle, a partner of the

plaintiff concern; that said written contract was returned the same day to said Doyle, who accepted the same; that on March 24, 1952, one Warren B. Smith, a co-partner of Doyle, visited defendant's home and made the necessary measurements, whereupon, on the same day, the plaintiff put through an order to a firm in Rhode Island to manufacture the aforesaid storm windows; that the windows in question were custom made windows built to order, and were not standard sizes, and that the cost of said windows to the plaintiff was $245.45, which sum was paid by the plaintiff to the Rhode Island firm.

The judge also found that upon delivery of the completed windows to the plaintiff, Mr. Doyle notified defendant of their arrival and offered to deliver them and install them at defendant's home, but defendant refused to accept; that payment on account was never made by the defendant; that the windows, not of a shape or size for installation in the ordinary home, were placed for storage at plaintiffs' warehouse. She concluded that:

"Upon the foregoing findings and upon all the evidence, I rule that a valid contract was executed between the parties upon the aforesaid terms; that plaintiff fully complied with the terms thereof; that there was no rescission thereof; and that defendant breached the terms of said contract."

"It is well-settled that damages for breach of contract are assessed in such manner that the injured party shall be placed in the same position he would have been in, if the contract had been performed, so far as loss can be ascertained to have followed as a natural consequence, and to have been within the contemplation of the parties as reasonable men as a probable result of the breach, and so far as compensation therefor in money can be computed by rational methods upon a firm basis of facts. (*John Hetherington & Sons Ltd. v. William Firth Co.*, 210 Mass.

8, 21). The rule of damages for breach of contract to sell goods is that plaintiff is entitled to recover the difference between the contract price and the market value at the time of the breach. (*C. & S. Shoe Mfg. Co. v. Dennett F. Goddard, Inc.* 269 Mass. 317, 319). Inasmuch as the storm windows were custom-made and not of dimensions readily resalable, I find that their fair market value at the time of the breach was $100.00. In accordance with the foregoing rule of damages, the measure of damages will be the difference between said sum and the contract price of $472.00, to wit, $372.00. The evidence fails to sustain a finding of any additional damages."

After the judge's findings, on motion of the defendant, she amended her findings as follows:

"In paragraph 2 of the finding lines 11, 12 and 13 of said paragraph up to and including the word "same" be stricken from the said finding and that there be substituted therefor in the same place the following: 'Said written contract was returned the same day by Hoftyzer to the office of the plaintiffs and was signed by plaintiff Doyle 'R. M. Doyle' opposite the words 'accepted by' on the said contract' ".

The defendant also filed a motion for new trial on the grounds that the finding is (1) against the evidence, (2) the weight of the evidence, (3) the law, (4) the law and the evidence, and that (5) the damages are excessive and not warranted by the evidence, which the Court denied.

The report states that it contains all the evidence material to the questions reported.

It was a question of fact and not of law for the trial judge to find whether or not the order had been cancelled by the defendant before it was accepted by one of the plaintiffs, Doyle.

*Cruver Mfg. Co. v. Rousseau,* 240 Mass. 168.

According to the testimony of the defendant he notified the salesman, Hoftyzer, within four hours to cancel the order. But the trial judge apparently believed the testimony of the salesman, and found that at that time it had been already accepted by Doyle, one of the plaintiffs, to whom he delivered it immediately after it had been signed by the defendant. *Mathey v. Louis G. Freeman Co.*, 295 Mass. 361. There was no error therefore in the denial of the defendant's first three requests.

The eighth request became immaterial in view of the judge's findings of facts.

We think that there was prejudicial error in the denial of the fourth request. Even though the judge did not believe the salesman that he notified the plaintiff, Doyle, of the cancellation on the same day that the order was placed, the court could find that the defendant notified the agent who had secured the order on that day and that the plaintiffs were notified of the cancellation by letter, on March 24, 1952, and the plaintiffs did nothing to mitigate damages. Instead they proceeded to measure and order the windows, and did not halt their manufacture. As was said in *Hall v. Paine*, 224 Mass. 62, at 65 "it is a general principle of law, because it is a rule of fair dealing, that when one is deprived of the fruits of a contract, he must use the efforts of a reasonably prudent man to put himself in as good a position as he would have been in if the contract had not been abrogated. He cannot lie idly by and expect to recover all losses which such inaction may entail as damages for breach of the contract. He must be reasonably active and diligent to reduce his loss."

Furthermore, there was also an error in figuring the value of the windows at a market value of $100. We fail to find any such evidence in the report. For all it appears therein they may be worth the sum of $245.45, the plaintiffs paid for them. Therefore

the motion for new trial should have been allowed on the fifth ground so that the fair market value of the windows may be fully ascertained.

There being prejudicial error in the denial of the fourth request and of the motion for new trial on the fifth ground, the finding is to be vacated and the case remanded for a new trial.

John J. St. Andre, for the plaintiff.

Daniel W. Riordan, for the defendant.

*(Judge Cavan was present at the session of the Appellate Division when this case was argued and was supposed to write the opinion, but he died before doing so. Afterwards it was submitted on the briefs to the Presiding Justice who concurs in this opinion.)*