Nickerson, Gary A., J.
Pursuant to G.L.c. 30A, Plaintiff Ralph Crossen (“Crossen”) seeks judicial review of the Massachusetts Board of Registration of Housing Inspectors’ (“Board”) Final Decision and Order dated September 17, 2010. The challenged decision found that Crossen violated G.L.c. 112, §225(6)(v) by including a liquidated damages clause in his inspection report and violated 266 C.M.R. §6.04 by failing to include information regarding seven aspects of the electrical system of the home that was the subject of the report in question. The Board placed Crossen’s license to practice as a home inspector under probation, required him to take two continuing education courses, and assessed him a $1,000 fine.
Crossen contends the Board’s decision was ultra vires, legally erroneous, unsupported by substantial evidence and unwarranted by facts in the record, arbi-traiy, capricious, an abuse of discretion, and made upon unlawful procedure. For the reasons discussed below, the Court finds that the Board’s decision was reasonable, free from legal error, and supported by substantial evidence in the record. Plaintiffs Motion for Judgment on the Pleadings is therefore DENIED.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Plaintiff Ralph Crossen, the President of Eagle Eye Inspection Company (“Eagle Eye”), was licensed as a home inspector in the Commonwealth of Massachusetts on May 10, 2001. AR at 28. On October 24, 2006, he conducted an inspection of the residence at 147 Captain Bacon Road in South Yarmouth (“the home”) and prepared a report. AR at 31. Crossen’s client, the home’s prospective purchaser, filed a complaint against him with the Division of Professional Licensure on January 31,2007. Ex. B to Plaintiffs Motion for Judgment on the Pleadings. This complaint alleged, among other things, that Crossen negligently failed to inspect a “rotted sill pane” and a “rusted” electrical service panel that required subsequent repair. Id.
On April 10,2008, the Board issued Crossen an Order to Show Cause, alleging that Crossen failed to report on seven aspects[1] of the home’s electrical system, as required under Section 266 of the Code of Massachusetts Regulations. AR at 1. In addition, prosecuting counsel contended that Eagle Eye’s report contained an un-permissible Limitation of Liability clause, citing the ethical standards for home inspectors set forth at G.L.c. 112, §225(6)(v). AR at 22. Crossen filed an answer denying these allegations on April 28, 2008. AR at 98.
Prosecuting counsel filed a Motion for Partial Summary Decision on October 14, 2008,[2] after a status conference and a request for discovery had occurred. AR 232. Crossen also filed an Opposition/Motion for Summary Judgment six days later. Id. The Board found there were no disputed issues of material fact surrounding 1) the inclusion of a limitation of liability clause in Crosseris report and 2) his failure to report on seven aspects of the electrical system. AR at 99-100. Therefore, the Board granted prosecuting counsel’s Motion for Summary Decision on December 10, 2008. AR at 110. A hearing on sanctions was held on March 16, 2009, at which Crossen was given the opportunity to— and did in fact — present mitigating evidence. AR at 212.
On May 10, 2010, the Board issued a Tentative Decision, to which Crossen filed an objection on June 8, 2010. AR219; AR 221. On September 17,2010, the Board issued its Final Decision and Order, which put Crossen’s license on probation pending his successful completion of the National Home Inspectors Examina *628 tion. AR at 241. He was assessed a $ 1,000 penalty and required to complete two three-hour courses, one on report writing and one on electrical education. Id.
Crossen filed a complaint in this Court seeking review of the Board’s Order on October 12, 2010. A hearing on Crossen’s Motion for Judgment on the Pleadings was held on March 20, 2012.
DISCUSSION
Pursuant to G.L.c. 30A, §14, this Court conducted a thorough review of the administrative record to determine whether the Board’s decision was arbitrary and capricious, unsupported by substantial evidence, or otherwise based upon an error of law. Massachusetts Inst. of Tech. v. Department of Pub. Utils., 425 Mass. 856, 867-68 (1997). This “highly deferential” standard of review requires the court to “accord[J due weight to the experience, technical competence, and specialized knowledge of the agency, as well as the discretionary authority conferred upon it.” Hotchkiss v. State Racing Comm’n, 45 Mass.App.Ct. 684, 695-96 (1998). The court must “apply all rational presumptions in favor of the validity of the administrative action.” Zoning Bd. of Appeals of Amesbury v. Housing Appeals Board, 457 Mass. 748, 759 (2010).
After careful review of the record through this deferential lens, this Court finds that the Board did not act unreasonably or unlawfully, and that its decision to place Crossen’s license on probation, require him to take two courses on topics related to the alleged deficiencies in the report in question, and assess an administrative fine was supported by substantial evidence.
I. The Board’s Decision was Supported by Substantial Evidence in the Record
Crossen, as the appealing party, bears the “heavy burden” of demonstrating that the Board’s decision was not supported by substantial evidence. Zoning Bd. of Appeals of Canton v. Housing Appeals Board, 76 Mass.App.Ct. 467, 472 (2010). Substantial evidence is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” New Boston Garden Corp. v. Bd. of Assessors of Boston, 383 Mass. 456, 466 (1981). Accordingly, the Board’s decision “need not be based on the ‘clear weight’ of the evidence or even on a ‘preponderance of the evidence,’ bút rather only upon ‘reasonable evidence.’ ” Lisbon v. Contributory Retirement Appeal Bd., 41 Mass.App.Ct. 246, 257 (1996). Reasonable evidence is “such evidence as a reasonable mind might accept as adequate to support a conclusion” after consideration of opposing evidence in the record. Id. A reviewing court may not substitute its judgment on questions of fact for that of the Board. Southern Worcester County Voc. Sch. Dist. v. Labor Relations Comm’n, 386 Mass. 414, 420-21 (1982).
Here, Crossen has failed to show that the Board’s decision was unsupported by substantial evidence, as required for a reversal under G.L.c. 30A, §14(7). Rather, the Board reviewed briefs and submissions from both prosecuting counsel and Crossen and made a threshold determination that Crossen’s license was subject to sanctions. AR at 110. The Board then held a hearing on sanctions, in which Crossen presented mitigating evidence on his own behalf. AR at 212. The Board issued a Tentative Decision, considered Crossen’s objections thereto, and issued a Final Decision and Order. AR at 210, 220, 232.
A. Omissions from the Electrical Report
The Board found Crossen in violation of the home inspection regulations because he “failed to report on” seven aspects of the home’s electrical system. AR at 237. Crossen argues, primarily, that he prepared an Addendum that includes the required information. However, the Board determined that neither the addendum nor the report:
1) state the voltage as required by 266 C.M.R. §6.04(4)(b)(5);
2) discuss the exterior exposed service entrance conductors as required by 266 C.M.R. §6.04(a)(1);
3) identify the service as being overhead or underground, cable, encased in conduit, or other as required by 266 C.M.R. §6.04(4)(b)(l);
4) state the number of overcurrent devices in the panel enclosures, as required by 266 C.M.R. §6.04(4) (a) (6);
5) identify the materials of the service, feeder and branch-circuit conductors as required by 266 C.M.R. §6.04(4) (b)(2);
6) state the compatibility of the overcurrent devices and the size of the protected conductor as required by 266 C.M.R. §6.04(d)(2)(g); or
7) report the undedicated exterior and interior electrical receptacles as required by 266 C.M.R. §6.04(4)(c)(2).
AR at 233-37.
Consequently, the Board determined that the Addendum failed to cure the defects in the report, and we defer to that reasonable assessment.[3] This Court will not disturb the Board’s determination, in its expertise, that these elements of the electrical system were insufficiently identified in Crossen’s report, thereby warranting sanctions. See AR 237.
Finally, though Crossen alleges he had a “final sit-down and walk around” with his client to review the items covered in the Addendum, such a conversation does not absolve him of the requirement to prepare a report that is fully compliant with the applicable statute and regulations. AR at 234. Crossen argues that the terms “observe” and “identify” in 266 C.M.R §6.04(4) do not require an inspector to document his findings unless he notices something that requires additional investigation or repair. However, given the high level of detail in the regulations that set forth each individual component of home inspection procedure, the Board’s contrary interpretation of its regulation is reasonable. As the *629 Board stated, “266 C.M.R. §6.04(4) painstakingly lists the requirements of an adequate home inspection, it is therefore unlikely that the Board would have included, in great detail, the electrical system components an inspector must ‘observe’ if it intended for this to be an informal procedure requiring no record.” AR at 240. As the Board’s interpretation of its regulations is reasonable and consistent with the purpose of a home inspection (“to provide the Client with an inspection Report that forthrightly discloses the physical conditions of the systems and components listed in 266 CMR 6.04 which are Readily Accessible and Observable, including those systems and components, which are Safety Hazards as Observed at the time of the inspection”) it will be upheld. See 266 C.M.R. §6.02; Dowling v. Registrar of Motor Vehicles, 425 Mass. 523, 525 (1997) (“Where the [agency’s] statutory interpretation is reasonable ... the court should not supplant [its] judgment”).
B. Liquidated Damages Clause
Substantial evidence in the record also demonstrates that Crossen’s report contained a liquidated damages clause in violation of G.L.c. 112, §225(6)(v). AR at 31. That section prohibits “attempting to limit liability for negligent or wrongful errors or omissions by use of a clause within a performance contract that limits the cost of damages for negligent or wrongful errors or omissions” by making the inclusion of such language in an inspection contract an ethical violation. The relevant paragraph of Crossen’s inspection report reads;
LIQUIDATED DAMAGES. It is understood and agreed by the parties .. . that the fee for the inspection is based solely on the value of the service provided by Eagle Eye in the performance of the limited visual inspection and the production of the report as described herein, that it is impractical and extremely difficult to affix actual damages, if any, which may result from the failure to perform such services, and in the case of failure to perform such services and a resulting loss, Eagle Eye’s liability hereunder shall be limited to an amount equal to the inspection fee multiplied times (2), or $500 whichever is less, as liquidated damages, and not as a penalty, and this liability shall be exclusive.
ARat 31.
The Board concluded that the phrases “Eagle Eye’s liability hereunder shall be limited to” and “this liability shall be exclusive” violated G.L.c. 112, §225(6)(v). AR at 106. It also rejected Crossen’s argument that this paragraph was not intended to limit his liability for “wrongful errors and omissions,” thus removing the liquidated damages clause from the ambit of §225(6)(v). However, the clause is made expressly applicable “in the case of failure to perform such services.” Crossen’s failure to perform services contracted for, the Board reasoned, would constitute a “negligent or wrongful error or omission,” as required by the statute. Consequently, the liquidated damages clause is subject to — and in violation of — §225(6) (v).
Next, Crossen argues that the unsigned report does not constitute a contract. However, 266 C.M.R. §6.03(l)(a) requires inspectors to "use a written contract and provide only the Client with an original copy of the contract unless otherwise directed by the Client.” Thus, the Court notes that if Crossen’s position were correct, he could be found in violation of an independent provision and subject to further sanctions.[4]
The function of the report, the intent behind the liquidated damages clause, and the parties’ actions (that is, Crossen providing a service to his client in exchange for compensation) support the Board’s finding that the report was, in fact, a contract. AR at 106. The Board observed that, “as in this case, the contract is usually the home inspection report.” Id. Regardless of whether Crossen’s report was signed by both parties, a contract by performance arose when Crossen inspected the home in exchange for payment of the agreed-upon sum. See, e.g., Northampton Inst. For Sav. v. Putnam, 313 Mass. 1, 7 (1943) (full performance by the offeree constitutes acceptance). Crossen’s position is further belied by the text of the report, which states, “[t]his is a legally binding contract” and contains a severability clause[5] to address the possibility that a portion of “this agreement” could be found “invalid or unenforceable.” AR at 31.
The Board correctly ruled that the mere presence of a “Governing Law & Severability” clause does not negate the violation. A severability provision does not authorize Crossen to include prohibited terms in the contract. Furthermore, regardless of the enforceability of the liquidated damages clause, the violation lies in Crossen’s “attempting to limit liability for negligent or wrongful errors or omissions.” G.L.c. 112, §225(6)(v) (emphasis supplied). Crossen alleges that he included the liquidated damages clause as a condition of his insurance coverage, but the origins of the language do not negate the fact that his contract contained language that violated the clear terms of the statute. While compiling the cover page of his report, Crossen was represented by counsel, who “looked at the inspection agreement and thought we were ok but just to be safe recommended that we not sign it after an inspection and not seek the signature of the buyer either on it. That way it would not be a signed contract that could be viewed as violating a State opinion.” Motion for Judgment on the Pleadings at ¶26.
The Board is not precluded from imposing sanctions because the corporation’s name appears throughout the form. The sanctions were imposed on Crossen’s individual license, not Eagle Eye. As the Board observed, “Crossen cannot shield his license via the corporate veil of the corporation’s performance of home inspections depends on [his] license.” AR at 240. Here, it is undisputed that Crossen conducted the inspection and issued the report. The license of any individual inspector may *630 be revoked, suspended, or otherwise sanctioned for a violation of G.L.c. 112 under appropriate circumstances; that Crossen was employed by Eagle Eye (albeit as President) does not immunize him from individual responsibility for the violations found by the Board.
Finally, the Board did not implicitly approve the text of the liquidated damages clause when it granted Crossen’s license application. The administrative record demonstrates that neither Crossen’s application nor the sample report submitted in connection therewith contained a liquidated damages clause. See AR 108 (noting a provision that was not present “could not have been reviewed, let alone approved by the Board”).
II. The Board’s Decisions Were Not Arbitrary, Capricious, or an Abuse of Discretion
A decision is arbitrary and capricious “when it lacks any rational explanation that reasonable persons might support.” City of Cambridge v. Civil Serv. Comm’n, 43 Mass.App.Ct. 300, 303 (1997). Thus, if “reasonable minds can differ” as to the outcome, a decision does not rise to the level of arbitrary and capricious. Doe v. Superintendent of Schools of Stoughton, 437 Mass. 1, 6 (2002). As discussed above, the Board’s decisions were grounded in an extensive administrative record consisting of a hearing on sanctions, exhibits, and the parties’ briefs. Because “[a] court may not displace an administrative board’s choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo,” this Court’s inquiry is limited to whether the record before the Board contained “such evidence as a reasonable mind might accept as adequate to support” its determinations that (1) Crossen’s license was subject to sanctions and (2) given the record before it, probation, a fine, and requiring two continuing education courses were appropriate sanctions. Labor Relations Comm’n v. University Hosp., Inc., 359 Mass. 516, 521 (1971).
The Board’s reasonable interpretations of its own regulations and the statute it is charged with administering are entitled to deference. Dowling, 425 Mass. at 525. Because the record contains sufficient evidence upon which to reach this conclusion, as discussed in Section I above, the Board’s decision must be upheld.
III. The Board’s Decisions Were Not Ultra Vires, Procedurally Defective, or Legally Erroneous.
General Laws chapter 112, §225 authorizes the Board, after a hearing and by majority vote, to “deny, refuse renewal, limit, suspend, or revoke the license of a home inspector. . . upon proof to the satisfaction of the Board that the holder thereof has . . . violated any rule or regulation of the Board.” G.L.c. 112, §225(4). The Board may also take such action if it finds the inspector “violated any ethical standard which the board determines to be of such a nature as to render such person unfit to practice as a home inspector . . . such as . . . attempting to limit liability for negligent or wrongful errors or omissions by use of a clause within a performance contact that limits the cost of damages for negligent or wrongful errors or omissions.” G.L.c. 112, §226(6) (v). Consequently, the Board had the authorify to impose sanctions for the violations it found.
In the course of adjudicating the violations and resulting sanctions, the Board considered Crossen’s Response to the Order to Show Cause, Crossen’s Opposition to prosecuting counsel’s Motion for Summary Decision and his own Motion for Summary Judgment, afforded Crossen a hearing on sanctions, considered his Objection to the Board’s Tentative Decision, and reviewed the evidence in the record. The Court is therefore satisfied that the Board conducted the adjudication in accordance with proper procedure.
ORDER
For the foregoing reasons, it is hereby ORDERED that Plaintiffs Motion for Judgment on the Pleadings is DENIED. The Board’s Final Decision and Order dated September 17, 2010 is AFFIRMED.

The Board alleged that Crossen failed to report on: 1) the voltage of the main service disconnect; 2) the service entry conductor materials; 3) whether the type of service was overhead or underground; 4) the number of branch circuits in the panel; 5) the type of branch circuit conductor; 6) the compatibility of the overload protection devices compared to the size of the protected conductors; and 7) whether there was ground fault protection.

See AR 233, n.2.

The Board further deemed the Addendum “unreliable” and noted that, despite prosecuting counsel’s request, this document was not produced before the discovery deadline. AR at 107. To the extent that the Board has made any apparent credibility determinations, its finding that the Addendum would fail to remedy the defects in any event provides a sufficient, independent ground for its decision.

Crossen argues that a revision of the law in 2006 eliminated the requirement of a written contract in favor of simply a written “report.” However, the new regulations did not take effect until January 25, 2008 and the corresponding policy guidelines were not issued until February 4, 2008. Thus, although the policy describing the new regulations states, “inspectors are encouraged to use the new Standards of Practice prior to June 1, 2008,” this appears to cover the period from enactment (1/25/08) until June 1, 2008, when enforcement actions under the new law began. As the report in question was produced in October 2006, Crossen could not have relied on the changed contract requirement in issuing his report. Indeed, the proposed changes (or “redline" edits) that Crossen cites do not appear to have been released until September 12, 2007, almost a year after the inspection was performed. Ultimately, however, a contract can be created by full performance by the parties, as discussed above. Here, the exchange of payment for services created a binding agreement between the parties, irrespective of the issue of signatures.

This clause reads: “GOVERNING LAW & SEVERABILITY": This agreement shall be governed by Mass. Law. If any portion of this agreement is found to be invalid or unenforceable by any court or arbitrator the remaining terms shall be in force between the parties.” AR at 32.